IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

BRIAN CRAWFORD,
as Personal Representative of the
Estate of Hilary Crawford, Deceased,

      Plaintiff,

vs.

SAFEWAY, INC.,
a Delaware Corporation,

      Defendant.

7:14CV5001

ORDER

This matter is before the court on Safeway, Inc.'s (Safeway) **_Daubert_** Motion to Exclude Proposed Expert Testimony and Report of Henry Nipper, Ph.D. (Filing No. 79). Safeway contends Dr. Nipper's opinion lacks reliability. Safeway filed a brief (Filing No. 81) and an index of evidence (Filing No. 80) in support of the motion. Brian Crawford (Crawford) filed a brief (Filing No. 82) and an index of evidence (Filing No. 83) in opposition to Safeway's motion. Safeway filed a brief (Filing No. 85) and an index of evidence (Filing No. 86) in reply. For the reasons set forth below, the court denies Safeway's motion.

## BACKGROUND

Here, Crawford seeks to recover damages for the wrongful death of his wife, Hilary Crawford (Mrs. Crawford), on April 10, 2012. **See** Filing No. 6 - Amended Complaint ¶ 1. The amended complaint alleges the following facts. Dr. Michael L. Matthews (Dr. Matthews) provided healthcare services to Mrs. Crawford from December 5, 2011, through April 6, 2012. **Id.** ¶ 8. From March 9, 2012, through April 6, 2012, Dr. Matthews prescribed contraindicated drugs (fluconazole and methadone) to Mrs. Crawford, and both prescriptions were filled at Safeway's pharmacy in Sidney, Nebraska. **Id.** ¶¶ 7, 10. Crawford contends Safeway's registered pharmacists were negligent in dispensing the fluconazole and methadone prescriptions to Mrs. Crawford, thus, Safeway is liable for Mrs. Crawford's death. **Id.** ¶¶ 7, 14.

To prove causation, Crawford has retained Dr. Henry C. Nipper (Dr. Nipper), Ph.D., DABCC, as an expert witness on toxicology. **See** Filing No. 80-1 - Ex. 1 Nipper

Depo. p. 1. Dr. Nipper is a professor of Pathology at the Creighton University School of Medicine. *Id.* He practices clinical chemistry and is an affiliated toxicologist. *Id.* Previously, Dr. Nipper ran a Forensic Toxicology lab, which conducted toxicology analysis for 43 Nebraska and 12 Iowa counties. *Id.* As Crawford's expert witness, Dr. Nipper issued a written expert report on October 29, 2015, and Safeway deposed Dr. Nipper on May 16, 2016. **See** Filing No. 81 - Brief p. 1. According to Dr. Nipper's expert report, he consulted seven scientific journal as sources before he rendered his expert opinion pertaining to Mrs. Crawford's death. **See** Filing No. 80-6 - Ex. 1(E) Expert Report p. 19-21. A subpart of Dr. Nipper's expert report states:

> The autopsy revealed no respiratory depression or pleural effusions . . . . Given that Hilary Crawford did not present with symptoms of respiratory depression, but rather died suddenly, it appears that she was the victim of QT interval prolongation and torsades de pointes (TdP) that resulted from the interaction of fluconazole and methadone. According to Pearson and Woosley (7) "Both QT prolongation and TdP are events that can only be reported if captured on an ECG." That, of course, was impossible to attain in this case because of Ms. Crawford's sudden demise.
>
> * * *
>
> It is my opinion, to a **reasonable scientific certainty**, that the combination of methadone and fluconazole administered to Hilary Crawford resulted in a higher level of methadone in her body and that the combination of drugs and their interaction were the cause of her death.

*Id.* at 21 (emphasis added).

Safeway denies liability in this case and has moved to exclude Dr. Nipper's expert report and anticipated testimony from trial. **See** Filing No. 79 - Motion ¶ 1. Safeway argues Dr. Nipper's opinion lacks foundation and certainty and it is speculative in nature. *Id.* ¶¶ 2, 7. Safeway argues Dr. Nipper's opinion is not reliable because in Dr. Nipper's deposition he would not answer with "certainty" when stating Mrs. Crawford died of QT interval prolongation and TdP. *Id.* ¶ 7. Safeway further argues Dr. Nipper's opinion is based on speculation because no ECG report was available for Dr. Nipper to make the determination Mrs. Crawford died of QT interval prolongation and TdP. *Id.* ¶¶ 3, 7. Safeway contends Dr. Nipper's deposition testimony reveals Dr. Nipper failed to

recognize signs and symptoms of respiratory depression in general. *Id.* ¶ 5. And Dr. Nipper misquoted a source in his expert report. **See** Filing No. 81 - Brief p. 15-16.

In opposing Safeway's motion, Crawford contends, "[a] perceived weakness with the sufficiency of an expert's foundation does not necessarily translate into a challenge." **See** Filing No. 82 - Response p. 2 (**citing** *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)). Crawford states, "Dr. Nipper performed a differential analysis on causation [by comparing] two competing theories on the mechanism of [Mrs. Crawford's] death and concluded that QT prolongation was the likely mechanism." *Id.* at 8. Crawford argues Dr. Nipper's expert opinion is sufficiently reliable as it is based "upon good science and supported by the facts in the record," and Dr. Nipper confirms "his opinion was based upon a reasonable degree of scientific certainty." *Id.* at 1; **see** Filing No. 80-6 - Ex. 1(E) Expert Report p. 21.

## ANALYSIS

Federal Rules of Evidence 702 and 703 govern the admissibility of expert testimony. *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 561 (8th Cir. 2014). The screening requirement of Rule 702 is a three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Polski v. Quigley Corp.*, 538 F.3d 836, 839 (8th Cir. 2008) (**citing** Fed. R. Evid. 702).

"An expert's opinion is to be based on 'facts and data in the case that the expert has been made aware of or personally observed.'" *Johnson*, 754 F.3d at 561 (**quoting** Fed. R. Evid. 703). In resolving a *Daubert* challenge, "[d]istrict courts must ensure that all scientific testimony is both reliable and relevant." *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). To satisfy the reliability requirement, "the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and the methodology underlying his conclusions is scientifically valid." *Id.* To satisfy the relevance requirement, the

3

proponent must show "the reasoning or methodology in question is applied properly to the facts in issue." *Id.* "Courts should resolve doubts regarding the usefulness of an expert's testimony in favor of admissibility." *Id.* (**citing *Clark By & Through Clark v. Heidrick*,** 150 F.3d 912, 915 (8th Cir. 1998)).  Nevertheless, "[n]othing in either ***Daubert*** or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." ***Gen. Elec. Co. v. Joiner***, 522 U.S. 136, 137 (1997).  Moreover, when the analytical gap between the data and proffered opinion is too great, the opinion must be excluded.  *Id.*  The inquiry as to the reliability and relevance of the testimony is a flexible one designed to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." ***Kumho Tire Co. v. Carmichael***, 526 U.S. 137, 152 (1999)).

      The court may consider several factors in determining the thoroughness of scientific methodology including:  (1) whether the theory or technique can be and has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique; and (4) whether the theory or technique has been generally accepted in the relevant scientific community.  ***Daubert***, 509 U.S. at 593-94.  Furthermore, "***Daubert's*** progeny provides additional factors such as:  whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." ***Lauzon v. Senco Prod., Inc.***, 270 F.3d 681, 687 (8th Cir. 2001).  The ***Kumho Tire*** Court stated, "the relevant reliability concerns may focus on personal knowledge or experience" and the factors used to evaluate an expert's testimony "depend[ ] upon the particular circumstances of the particular case at issue." ***Kumho Tire***, 526 U.S. at 150. Some evidence "cannot be evaluated accurately or sufficiently by the trial judge" in the procedural environment of a ruling on a motion in limine.  ***Stiffler v. Fid. National Mgmt. Servs., LLC,*** No. 8:14CV231, 2016 WL 2733119, at *1 (D. Neb. May 10, 2016)

4

(**quoting** *Jonasson v. Lutheran Child & Fam. Servs.*, 115 F.3d 436, 439 (7th Cir. 1997)).

"[A]n attack upon the probative sufficiency of evidence relates not to admissibility but to the weight of the evidence and is a matter for the trier of fact to resolve." *United States v. Beasley*, 102 F.3d 1440, 1451 (8th Cir. 1996) (**quoting** *United States v. Page*, 544 F.2d 982, 987 (8th Cir. 1976)). "Proponents of expert testimony need not demonstrate that the assessments of their experts are correct, and trial courts are not empowered 'to determine which of several competing scientific theories has the best provenance.'" *Kuhn v. Wyeth, Inc.*, 686 F.3d 618, 625 (8th Cir. 2012) (**quoting** *Milward v. Acuity Specialty Prod. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011)). "As long as the expert's scientific testimony rests upon 'good grounds, based on what is known' it should be tested by the adversary process with competing expert testimony and cross-examination, rather than excluded by the court at the outset." *Johnson v. Mead Johnson & Co., LLC*, 754 F.3d 557, 562 (8th Cir. 2014) (**quoting** *Daubert*, 509 U.S. at 590).

In the motion before the court, Safeway challenges the reliability requirement. Safeway argues Dr. Nipper's opinion lacks foundation and certainty and it is based on speculation; nevertheless, the court disagrees. The *Daubert* Court noted "it would be unreasonable to conclude that the subject of scientific testimony must be 'known' to a certainty; arguably, **there are no certainties in science** . . . . [and] scientists do not assert that they know what is immutably 'true.'" *Daubert*, 509 U.S. at 590 (emphasis added).

During Dr. Nipper's deposition, Safeway inquired about Dr. Nipper's expert report. **See** Filing No. 80-1 - Ex. 1 Nipper Depo. p. 18. Safeway asked Dr. Nipper, "[y]our opinion is that [Mrs. Crawford] suffered a QT event?" *Id.* Dr. Nipper replied, "[m]y opinion is that it **appears** that she suffered [QT prolongation or TdP] because she was not overdosed on methadone." *Id.* (emphasis added). Safeway pressed the question further by asking Dr. Nipper, "[c]an you say that with **certainty**?" *Id.* (emphasis added). Dr. Nipper replied, "[n]o, because I don't think we have -- we are unable, as I said in my opinion, we're unable to find hard evidence that [Mrs. Crawford] had QT prolongation or torsades de pointes because we don't have an EKG." *Id.*

Safeway further asked Dr. Nipper, "Right.  So how can we rely on that?"  *Id*.  Dr. Nipper replied, "[h]ow can you rely on it?  I don't think you can.  I think you have to trust me."  *Id.* at 19.  Deposition continued and Dr. Nipper further stated:

> To be . . . as conservative as I can, in my 45 years of being around clinical medicine, that when you don't have absolute proof, you have to use clinical judgment, and the clinical judgment is that if you don't have for sure a methadone overdose and the patient is dead and the other alternative are torsades de pointes and a QT prolongation, that is the obvious solution . . . .

*Id.*

Based on the above testimony, Safeway argues, since Dr. Nipper failed to answer Safeway's question with certainty, Dr. Nipper's expert report and anticipated testimony should be excluded from the upcoming trial.  Under the reliability requirement, an expert's opinion must be based on scientific methodology and reasonable reliability.  Safeway deviated from ***Daubert*** when it attempted to obtain Dr. Nipper's expert opinion with absolute certainty.  Dr. Nipper is an affiliated toxicologist and has been practicing pathology and toxicology for 45 years.  It is evident from Dr. Nipper's expert report and deposition testimony Dr. Nipper used scientific methodology in assessing the cause of Mrs. Crawford's death.  In particular, Dr. Nipper compared two competing theories, respiratory depression and QT prolongation, and Dr. Nipper concluded QT prolongation was the likely mechanism.  Under ***Daubert***, Dr. Nipper is not required to provide an opinion with an absolute certainty, thus, this court rejects Safeway's certainty argument.

Safeway further argues Dr. Nipper's opinion is speculative and *ipse dixit*.  The reliability prong requires an expert to render an opinion based on scientific methods and analysis.  Here, Dr. Nipper's theory is Mrs. Crawford suffered QT interval prolongation or TdP because of the interaction of two drugs, fluconazole and methadone.  In addition, the ***Kumho Tire*** Court made it clear an expert's testimony "depends upon the particular circumstances of the particular case at issue."  ***Kumho Tire***, 526 U.S. at 150.  The circumstances of this case show no ECG was available, nevertheless, an expert has to determine the cause of Mrs. Crawford's death without an ECG.  That is what Dr. Nipper did.  Dr. Nipper concluded that Mrs. Crawford died because of QT Prolongation and TdP after he read seven scientific journals and analyzed the information and files

6

provided to him by Crawford's counsel. **See** Filing No. 80-6 - Ex. 1(E) Expert Report p. 19-21. And after reviewing the exhibits, this court concludes that Dr. Nipper's opinion is not based on speculation instead it is based on scientific analysis. Furthermore, Safeway states Dr. Dan Hilleman, its own expert, reviewed the autopsy report, concluding there is no evidence in the autopsy report demonstrating Mrs. Crawford died of QT prolongation and TdP. **See** Filing No. 81 - Brief p. 9. A contradiction does not necessarily mean that the information is unreliable. And it is the trier of fact's role to determine the credibility of experts, not the court.

Safeway contends Dr. Nipper misquoted one of the sources in his expert report. **See** Filing No. 81 - Brief p. 15-16. In Dr. Nipper's expert report, he cited a scientific journal titled "Clinical Relevance of the Pharmacokinetic Interactions of Azole Antifungal Drugs and Other Coadministered Agent," written by R.J. Bruggemann et al (Bruggemann). *Id.* Erroneously, Dr. Nipper analyzed the drug table from Bruggemann for the drug voriconazole rather than the drug fluconazole. However, Bruggemann does not discuss voriconazole exclusively, instead Bruggemann discusses multiple azole antifungal drugs, including, but not limited to, voriconazole and fluconazole. During his deposition, Dr. Nipper explained:

> Bruggemann and Liu were more worried about voriconazole that they were about fluconazole, but fluconazole is a problem drug too, and the fact that we're concentrating on voriconazole is taking our eye off the ball here.
>
> ***
>
> The problem is the fact that we're looking at fluconazole and methadone, and **I may have made a mistake in citing this information, but these are all azole drugs.** And if you look at the bigger picture, which is what UpToDate does in looking at drug interactions, you will see – you see that – you know, you skipped over the fact that – that the Lexicomp UpToDate has – has a boxed warning now for that – for that drug, and – for that drug combination, and that's more important to the – that's more important to consider the end – the end opinion that these – this combination should be avoided.

**See** Filing No. 80-1 - Ex. 1 Nipper Depo p. 21-22 (emphasis added).

Not only did Dr. Nipper confirm he made a citation error during his deposition, but he did not change his opinion in regard to the cause of Mrs. Crawford's death. *Id.* Dr.

Nipper cited seven scientific articles in his expert report, and this court concludes, Dr. Nipper's single citation error is insufficient to exclude Dr. Nipper's expert report and anticipated testimony from the upcoming trial.

Safeway further identifies additional instances of inconsistent or conflicting testimony from others. Safeway contends Crawford's experts (Drs. Nipper and Schilke) have inconsistent opinions. **See** Filing No. 79 - Motion ¶ 6. In addition, Dr. Nipper failed to understand the signs and symptoms of respiratory depression even though Safeway's witness, Heather Cowden, (Mrs. Crawford's friend) gave a description of Mrs. Crawford consistent with respiratory depression. **See** Filing No. 81 - Brief p. 13-14. It is trier of fact's function to determine the inconsistencies in the testimonies, not the court.

Finally, this court denies Safeway's summary judgment motion as it appears to be based on ***Daubert*** arguments. **See** Filing No. 89. However, to the extent this opinion does not resolve the motion for summary judgment issues, the parties will have additional time to file a narrower summary judgment motion.

## CONCLUSION

The court recognizes Dr. Nipper's expert report and deposition testimony have flaws, but even under ***Daubert***, these flaws should have an opportunity to pass through "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof [and those] are . . . appropriate means of attacking shaky but admissible evidence." ***Daubert***, 509 U.S. at 596. At trial, Safeway will have an opportunity to attack and challenge Dr. Nipper's expert report and anticipated testimony. Upon consideration,

**IT IS ORDERED**:

1. Safeway's ***Daubert*** Motion to Exclude Proposed Expert Testimony and Report of Henry C. Nipper, Ph.D. (Filing No. 79) is denied.

2. Safeway's Motion for Summary Judgment (Filing No. 89) is denied without prejudice. The parties shall have to on or before October 6, 2016, to file any motion for summary judgment.

Dated this 22nd day of September, 2016.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge